# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

ERICKA M., obo D.A.W., a minor )
)
      Plaintiff, )
)
v. ) Case No. 18-CV-557-FHM
)
ANDREW SAUL, Commissioner of )
Social Security, )
)
      Defendant. )

## OPINION AND ORDER

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable

---

[1] Plaintiff's application was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) Lantz McClain was held May 22, 2017. By decision dated September 28, 2017, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on August 21, 2018. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

Background

Plaintiff[2] was one month old at the time of the alleged onset of disability and ten years old on the date of the ALJ's denial decision. He claims to have been disabled since February 3, 2007 as a result of learning disability, speech problem, asthma, attention deficit disorder, oppositional defiance disorder, and migraines. [Dkt. 15, p. 1; R. 170].

Sequential Evaluation for Child's Disability Benefits

The procedures for evaluating disability for children are set out at 20 C.F.R. § 416.924(a). The first step is to determine whether the child is performing substantial gainful activity. If not, the next consideration is whether the child has a "severe" mental or physical impairment. A "severe" impairment is one that causes more than minimal functional limitations. If a "severe" impairment is identified, the claim is reviewed to determine whether the child has an impairment that: 1) meets, medically equals, or functionally equals the listings of impairments for children;[3] and 2) meets the duration

---

[2] The child claimant, whose date of birth is January 5, 2007, is referred to herein as Plaintiff.
[3] The listings describe, for each of the major body systems, medical findings which are considered severe enough that they represent impairments which presumptively demonstrate disability. 20 C.F.R. Pt. 404, Subpt. P, App.1.

2

requirement. If the child does not have impairments of a severity to meet a listing, the severity of the limitations imposed by impairments are analyzed to determine whether they functionally equal a listing. Six broad areas of functioning, called domains, are considered to assess what a child can and cannot do. Impairments functionally equal a listing when the impairments result in "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a. The six domains are: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A limitation is "marked" when it interferes seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(I). An "extreme" limitation interferes very seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(I).

The ALJ's Decision

The ALJ determined that Plaintiff does not have an impairment or a combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 416.926a(e)(2)(I). The ALJ also determined that Plaintiff does not have an impairment or combination of impairments that functionally equal the severity of the listings. In this regard the ALJ found that Plaintiff has less than marked limitation in the domain of Acquiring and Using information; a marked limitation in the domain of Attending and Completing Tasks; a less than marked limitation in the domain of Interacting and Relating with Others; a less than marked limitation in the domain of Moving About and Manipulating Objects; a less than marked limitation in the domain of the Ability to Care

3

for Himself; and less than marked limitation in the domain of Health and Physical Well-Being. [R. 26-33]. Because Plaintiff does not have an impairment or combination of impairments that result in either "marked" limitation in two domains of functioning or an "extreme" limitation in one domain of functioning, the ALJ found that Plaintiff is not disabled as defined by the Social Security Act.

## Plaintiff's Allegations

Plaintiff asserts that: 1) the ALJ's Step Three findings are conclusions that are not specific as required by law; 2) the ALJ erred in his findings regarding the functional equivalence domains; and 3) the Decision in this case was rendered by an Administrative Law Judge whose appointment was invalid at the time he rendered his decision. [Dkt. 15, p. 5].

## Analysis

### Analysis of Listed Impairment

Plaintiff argues that the evidence in this case provides documentation that he meets or equals listings in §§ 112.10 and 112.11. [Dkt. 15, p. 6-9]. The following criteria must be met for a finding of disability under §§ 112.10 and 112.11:

> **112.10** *Autism Spectrum Disorder*
>
> a. These disorders are characterized by qualitative deficits in the development of reciprocal social interaction, verbal and non-verbal communication skills, and symbolic or imaginative play; restricted repetitive and stereotyped patters of behavior, interests, and activities; and stagnation of development or loss of acquired skills. Symptoms and signs may include, but are not limited to, abnormalities and unevenness in the development of cognitive skills; unusual responses to sensory stimuli; and behavioral difficulties, including hyperactivity, short attention span, impulsivity, aggressiveness, or self-injurious actions.

4

> **112.11** *Neurodevelopmental disorders*:
>
>> a. These disorders are characterized by onset during the developmental period, that is, during childhood or adolescence, although sometimes they are not diagnosed until adulthood. Symptoms and signs may include, but are not limited to, underlying abnormalities in cognitive processing (for example, deficits in learning and applying verbal or nonverbal information, visual perception, memory, or a combination of these); deficits in attention or impulse control; low frustration tolerance; excessive or poorly planned motor activity; difficulty with organizing (time, space, materials, or tasks); repeated accidental injury; and deficits in social skills. Symptoms and signs specific to the disorders include sudden, rapid, recurrent, non-rhythmic, motor movement or vocalization.

Plaintiff contends that the ALJ erred in failing to follow clear evidence, specifically the psychological examinations and reports of John Stewart, Ph.D., [R. 545-551], and consultative examiner Paul Schwartz, Ph.D., [R. 448-450], which provide documentation that Plaintiff's mental impairments are disabling and establishes he meets or equals Listing 112.10 and 112.11. [Dkt. 15, p. 7-9].

An intellectual evaluation was performed by Dr. Schwartz on April 14, 2015. As noted by the ALJ, Plaintiff was happy, polite, highly verbal, and cooperative. Plaintiff spoke quickly with age appropriate sentence structure, grammar, and he had no articulation problems. Plaintiff was highly impulsive, unfocused, and very restless. Plaintiff was prompted to slow down and pay attention many times which helped to a certain degree. Dr. Schwartz indicated Plaintiff's full-scale I.Q. score was 88 and determined that he exhibited functioning in the low average range with respect to his overall cognitive-intellectual abilities. Plaintiff's composite scores fell within the low average to average levels, however, test results were probably an underrepresentation of his optimal functioning. [R. 449-50].

Plaintiff presented to Dr. Stewart on May 9, 2017 for psychological examination. Plaintiff's mother reported he did not have significant difficulties in relationships with household members or peers, and had no behavioral difficulties at home or school. Plaintiff was not defiant and did not throw tantrum type behaviors. Plaintiff got stressed easily and would fidget and shake his hands. Plaintiff had difficulty speaking and problems learning, understanding, or remembering academic material. Plaintiff was also involved in the computer coding club and golf. As noted by the ALJ, Dr. Stewart found Plaintiff did not appear to become easily frustrated and his thought process was organized and reality based. He was cooperative throughout testing and responded to encouragement and compliments. His eye contact was poor and interactions were odd in nature. Plaintiff did not exhibit any difficulty sustaining attention, controlling his activity level, or with memory recall. He was not impulsive; insight appeared to be appropriate; and judgment was logical. Cognitive functioning revealed Plaintiff's Full-Scale I.Q. was 71, which is classified as very low. Verbal comprehension and fluid reasoning were average. Testing revealed Plaintiff had significant difficulties with inattention and visual-motor abilities were in the low average range. Plaintiff tended to isolate himself and had few interpersonal relationships. Plaintiff exhibited symptoms of Autism Spectrum Disorder and difficulties with inattentiveness.

Dr. Stewart opined that Plaintiff's cognitive deficits might interfere with his ability to function efficiently. Outpatient therapy was recommended to address his irritability and ADHD symptoms and indicated Plaintiff's mother should be a part of the therapy process to learn parenting skills and effective child management techniques. Plaintiff would also

benefit from participation in organizations that would promote social interaction with same age peers such as church groups or athletic organizations. [R. 545-51].

The ALJ also noted that Christopher Klein, Ph.D., found Plaintiff was respectful, quick, active, cleaned up before moving to a new activity at the request of his mother, and frequently changed interests often returning back to some activities. In February 2015, Johna K. Smasal, Ph.D., observed Plaintiff complying with his mother's requests to clean up before moving on to another activity/toy, he gave good effort on cognitive and neuropsychological tasks, was overall focused and cooperative, and provided appropriate responses. In March 2015, consultative examiner, Keivan Abtahi, D.O., noted Plaintiff was cooperative, speech was one hundred percent intelligible, thought processes were normal, he was calm, not fidgety, and paid attention to questioning. [R. 24-25].

The ALJ clearly considered *Listings* §§ 112.10 and 112.11 as he specifically noted:

> At the hearing, Mr. McTighe argued listing 112.10. Listing 112.10 requires (A) medical documentation of (1) qualitative deficits in verbal communication, nonverbal communication, and social interaction and (2) significantly restricted, repetitive patterns of behavior, interests or activities and (B) extreme limitation of one, or marked limitation of two, of the 4 areas of mental functioning.
>
> The undersigned also considered listing 112.11. Listing 112.11 requires (A) medical documentation of (1) one or both of the following: (a) frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks or (b) hyperactive and impulsive behavior or (2) significant difficulties learning and using academic skills or (3) recurrent motor movement or vocalization and (B) extreme limitation or (sic) one, or marked limitation in two, of the 4 areas of mental functioning.

7

> The undersigned determined neither listing was met or medically equaled because the paragraph "B" criteria were not satisfied in that the claimant does not have one extreme or two marked limitations in any of the four areas of functioning.

[R. 19].

The court finds that the ALJ's decision demonstrates that he adequately considered the evidence and the evidence does not demonstrate that Plaintiff met those listings. Accordingly, substantial evidence supports his conclusion. Plaintiff also argues that the ALJ engaged in picking and choosing the evidence to support his decision. [Dkt. 15, p. 7]. The court finds that the ALJ appropriately cited to the record to support his findings and that his findings are supported by substantial evidence.

<u>Functional Equivalence Domains</u>

As previously discussed, the ALJ found Plaintiff has a less than marked limitation in all six functional equivalence domains with the exception of a marked limitation in Attending and Completing Tasks. Plaintiff argues that he demonstrates "marked" limitations in the domains of Acquiring and Using Information and Interacting and Relating with Others. Further, he demonstrates an "extreme" limitation in the domain of Attending and Completing Tasks. According to Plaintiff, the ALJ failed to properly consider the Teacher Questionnaire which includes seven very serious problem responses to thirteen points. [Dkt. 15, p. 10-11, R. 378-85].

It is Plaintiff's burden to show that his impairments are equivalent to a listing. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Furthermore, all of the specified medical criteria must be matched to meet a listing. An impairment that manifests only some of the criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493

8

U.S. 521, 531, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1988). To "meet" a listed impairment, a child must demonstrate both the "A" and "B" criteria of the impairment. See 20 C.F.R. pt. 404, subpt. P, app. 1. "Paragraph A of the listings is a composite of medical findings which are used to substantiate the existence of a disorder" whereas the "purpose of the paragraph B criteria is to describe impairment-related functional limitations which are applicable to children." *Id.* Further, to be found disabled based on meeting a listed impairment, the claimant must exhibit all the elements of the Listing. If a child's impairment(s) do not "meet" a listed impairment, the impairment(s) may still be medically or functionally equal in severity and duration to the medical criteria of a listed impairment. *See* 20 C.F.R. § 416.926a. Medical equivalency is covered by 20 C.F.R. § 416.926; functional equivalency is covered by § 416.926a.

## Acquiring and Using Information

Acquiring and Using Information concerns how well a child is able to acquire or learn information, and how well a child uses the information he has learned. This domain involves how well children perceive, think about, remember, and use information in all settings, which include daily activities at home, at school and in the community. 20 C.F.R. 416-926a(g) and *SSR* 09-03p.

The court does not agree with Plaintiff's assertion that he demonstrates a "marked" limitation in the domains of Acquiring and Using Information. The ALJ specifically noted that Plaintiff's first grade teacher reported a very serious problem in reading and comprehending written material, comprehending and doing math problems, expressing ideas in written form, learning new material, and recalling and applying previously learned material and a serious problem comprehending oral instructions and providing organized

9

oral explanations and adequate descriptions. However, Ms. Barr reported only an obvious problem in understanding school and content vocabulary and applying problem-solving skills and no problem in understanding and participating in class discussions. Physical examination reports of Plaintiff's memory/judgment were reported as normal.

Moreover, in the March 2017 IEP report, it was recommended Plaintiff use the resource room for math but would be returning to a regular education classroom with monitoring in reading because he made good progress and was reading at a proficient level. [R. 22-23]. Dr. Stewart reported that Plaintiff appeared to understand the meanings of words and concepts as well as most peers his age. Further, Plaintiff did not exhibit any difficulty with memory recall, his insight appeared to be appropriate, and judgment was logical. [R. 19, 27]. The court finds that the ALJ's determination that Plaintiff has a less than marked limitation in the domain of Acquiring and Using Information properly applies the terms and that the determination is supported by substantial evidence.

### Attending and Completing Tasks

This domain considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the mental pace at which he performs activities and the ease of changing activities. Attending and completing tasks also refers to a child's ability to avoid impulsive thinking and his ability to prioritize competing tasks and manage his time. 20 C.F.R. 416.926a(h) and *SSR* 09-04p.

Plaintiff argues that the ALJ erred in finding his limitation in the domain of Attending and Completing Tasks was "marked" and as opposed to "extreme." [Dkt. 15, p. 11]. The ALJ noted that Plaintiff's teacher reported he had a very serious problem focusing long

10

enough to finish assigned activity or tasks, refocusing to tasks when necessary, carrying out multi-step instructions, organizing own things or school materials, completing tasks/homework assignments, completing work accurately without careless mistakes, and working at reasonable pace/finishing on time. She also reported only an obvious problem carrying out single-step instructions and working without distracting self or others, only a slight problem paying attention when spoken to directly, and no problem waiting to take turns and changing from one activity to another without being disruptive.

The ALJ acknowledged Dr. Smasal found Plaintiff needed constant redirection to remain in his seat, needed breaks every 10 to 15 minutes in order to maintain focus, easily distracted, interrupted when being asked a question, needed frequent reminders to focus, and needed questions repeated frequently. Dr. Stewart reported Plaintiff's eye contact was poor, however, he responded to encouragement and compliments. Plaintiff did not exhibit any difficulty sustaining attention or controlling his activity level, his insight appeared to be appropriate, and his judgment appeared to be logical. Dr. Schwartz reported Plaintiff remained highly impulsive, unfocused, and very restless. Plaintiff had to be prompted to slow down and pay attention which only helped to a certain degree. [R. 28-29].

The ALJ also discussed evidence indicating Plaintiff was cooperative, focused, calm, paid attention to questions, and gave good effort in tasks. The ALJ determined that the records, at most, indicate Plaintiff has mild to moderate expressive language difficulties, but did not support a learning disorder. [R. 24]. The court finds that the ALJ properly considered all of the evidence and that the evidence cited by the ALJ constitutes substantial evidence in support of his findings in this domain. The court disagrees with

11

Plaintiff's contention that the highest rating of the Teacher Questionnaire of "very serious" should equate with the term "extreme" on the Listing Equivalence findings. Plaintiff failed to provide any authority supporting that proposition.

<u>Interacting and Relating with Others</u>

This domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. Interacting and relating with others relates to all aspects of social interaction at home, at school, and in the community. Because communication is essential to both interacting and relating, this domain considers the speech and language skills children need to speak intelligibly and to understand and use the language of their community. 20 C.F.R. 416.926a(i) and *SSR* 09-05p.

Plaintiff argues that his limitation in the domain of Interacting and Relating with Others is at least at the "marked" level as opposed to "less than marked" as determined by the ALJ. [Dkt. 15, p. 12]. Plaintiff contends that his mother reported that he cannot make new friends, play team sports, does not like to be with other children, cooperate, or share well. [R. 337]. Dr. Stewart stated that Plaintiff tends to isolate himself, has few interpersonal relationships, and fails to find pleasure in relationships although he desires to have those relationships. [R. 549].

The ALJ noted that Plaintiff's mother also reported that he has friends his own age and generally gets along with herself, other adults, and his school teachers. Plaintiff does not have any behavior problems and is very sweet, loving, and caring. Plaintiff also had best friend(s) and participated in extracurricular activities. [R. 19-20]. Plaintiff's teacher

12

reported only a slight problem following rules and using language appropriate to the situation and listener, and no problems playing cooperatively with other children, making and keeping friends, seeking attention appropriately, expressing anger appropriately, asking permission, responding/obeying adults in authority, and taking turns in a conversation. Dr. Stewart found Plaintiff to be cheerful and cooperative throughout testing. [R. 30].

The court finds that Plaintiff has pointed out the existence of contrary evidence in the record, but not the absence of substantial evidence to support the ALJ's determination that Plaintiff has a less than marked limitation in the domain of Interacting and Relating with Others.

## Appointments Clause Claim

Plaintiff argues that the ALJ who decided his case was not appointed in compliance with the Appointments Clause of the Constitution.[4] The Commissioner does not dispute that the ALJ was not constitutionally appointed[5] but argues that the court should not consider the argument because Plaintiff did not raise the issue during the administrative proceedings on his claim for benefits. To be clear, the Commissioner does not contend that Plaintiff failed to complete any of the steps in the administrative process. Rather, the Commissioner argues that Plaintiff failed to raise the particular issue during the administrative process.

---

[4] The Appointments Clause of the Constitution requires the President "to appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States." U. S. Const. art. II ,§2, cl. 2. It further provides that "Congress may by Laws vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the heads of Departments." Id.

[5] For purposes of this brief, Defendant does not argue that SSA ALJs are employees rather than inferior officers. [Dkt. 23, p. 10-11].

The Appointments Clause issue has been raised in a number of recent cases in response to *Lucia v. S.E.C.*, – U.S. –, 138 S.Ct. 2044, 2055, 201 L.Ed.2d 464 (2018) which held that the ALJs in the Securities and Exchange Commission (SEC) were not constitutionally appointed. The courts reviewing Social Security decisions where the Appointments Clause issue has been raised mostly find that the issue was forfeited because it was not raised before the Social Security Administration.[6] These cases rely on the general rule that before an issue can be raised on appeal to the courts, it must have first been raised before the administrative agency. They distinguish the result in *Lucia* based on language in that case that one who makes a "timely" challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief. 138 S.Ct. at 2055. These cases find that the Social Security claimant, having not presented the issue to the administrative agency, has failed to make a timely Appointments Clause challenge. The Commissioner's brief relies on similar arguments.[7]

A small number of cases rely on the Court's analysis in *Sims v. Apfel*, 550 U.S. 103, 105, 120 S.Ct. 2080, 147 L. Ed.2d 80 (2000) and conclude that the Appointments

---

[6] *Fortin v. Comn'r Soc. Sec.*, 2019 WL 1417161 (E.D. NC March 29, 2019)(rejecting magistrate judge's recommendation that court find no forfeiture occurred, finding that *Sims* left open the question of whether judicially created issue exhaustion at the ALJ level makes good sense; noting that Plaintiff in *Fortin* only brought up Appointments Clause issue in supplemental briefing after summary judgment), *Pearson v. Berryhill*, 2018 WL 6436092 (D. Kan. Dec. 7, 2018)(finding 42 U.S.C. § 406(g) contains nonwaivable and nonexcusable requirement that an individual must present a claim to the agency before raising it to the court and finding Plaintiff failed to raise Appointments Clause issue before agency rendered the challenge untimely), *Faulkner v. Commn'r Soc. Sec.*, 2018 WL 6059403 (W.D. Tenn. Nov. 19, 2018)(challenge under Appointments Clause is nonjurisdictional and may be forfeited; challenge forfeited where Plaintiff did nothing to identify challenge before agency and good cause was not shown for failure).

[7] The Commissioner also cites five regulations it contends supports requiring issue exhaustion. None of the regulations by their terms require issue exhaustion or notify claimants of an issue exhaustion requirement.

Clause issue was not forfeited.[8] In *Sims* the Supreme Court concluded that Social Security claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues. In reaching this conclusion, the Court considered the following factors.[9] First, requirements to exhaust issues are largely creatures of statute and no statute requires issue exhaustion before the Social Security Administration. Second, while it is common for agency regulations to require issue exhaustion, Social Security regulations do not require issue exhaustion. Third, the reasons why courts generally impose issue exhaustion requirements do not apply to the non-adversarial process of the Social Security Administration. Fourth, the Social Security Administration does not notify claimants of an issue exhaustion requirement. *Sims*, 120 S.Ct. at 2084-86.

While *Sims* does not address issue exhaustion before the ALJ, the reasons cited by the Supreme Court to reject an issue exhaustion requirement before the Appeals Council also apply to the other steps in the Social Security Administration process. The

---

[8] *Kellett v. Berryhill*, 2019 WL 2339968 (E.D. Penn. June 3, 2019)(finding the Appointments Clause issue is an important issue that goes to the validity of SSA proceedings which should be heard even if not properly preserved before the ALJ; discussing *Sims* rationale applied to Appointments Clause issues and finding no forfeiture, and digesting cases), Ready *v. Berryhill*, 2019 WL 1934874 (E.D. .Penn. April 30, 2019)(finding no forfeiture and that it would have been futile for Plaintiff to raise the challenge at the agency level), *Probst v. Berryhill*, –F.Supp.3d – (E.D. NC 2019)(noting majority of courts have determined challenge is forfeited by failure to raise issue before agency, digesting cases; relying on *Sims* and nonadversarial nature of Social Security hearings, finding it would be manifestly unfair to find waiver), *Bizzare v. Berryhill*, 364 F.Supp.3d 418 (M.D. Penn. 2019)(acknowledging result breaks from emerging consensus, noting no statute, regulation or judicial decision indicates that Social Security claimants forfeit judicial review of constitutional claims not raised at the administrative level, finding no authority suggesting that ALJs could resolve constitutional challenges to their own appointment, and finding no forfeiture occurred). See also *Cirko ex rel, Cirko v. Comn'r Soc. Sec.*, 948 F.3d 148 (Third Cir. 2020)(exhaustion of Appointments Clause claim is not required in SSA context).

[9] The court also considered the limited space on the form used to request Appeals Council review and an estimate that it would take only ten minutes to complete the form.

15

statute still does not require issue exhaustion. In the 20 years since the *Sims* decision, the Social Security Administration has not enacted any regulation requiring issue exhaustion. The Social Security Administrative process remains non-adversarial and claimants, many of whom are unrepresented, are still not notified of any issue exhaustion requirement. Finally, the undersigned notes that a ruling that *Sims* does not apply to the other steps in the administrative process would result in an issue exhaustion requirement at some steps of the process and not at subsequent steps.

The court is persuaded that the cases finding that no forfeiture occurs when the claimant fails to raise the Appointments Clause issue before the Social Security Administration are better reasoned in light of the Supreme Court's analysis in *Sims*.

The court finds that at the time the decision in this case was entered, September 28, 2017, the ALJ who issued the decision under review was not appropriately appointed under the Appointments Clause of the Constitution. The court further finds that Plaintiff did not forfeit the Appointments Clause claim by failing to raise that issue before the Social Security Administration. As a result, the ALJ's decision is REVERSED and the case is REMANDED to the Commissioner for further proceedings before a different constitutionally appointed ALJ.

SO ORDERED this 19th day of February, 2020.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE